# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY,<br><br>                 Plaintiff,<br><br>v.<br><br>METROMONT CORPORATION,<br><br>                 Defendant. | **CIVIL ACTION NO.:** _____<br><br>**COMPLAINT<br>FOR DECLARATORY RELIEF** |

Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff XL Specialty Insurance Company files this Complaint seeking declaratory relief, showing as follows:

## INTRODUCTION

1. Plaintiff XL Specialty Insurance Company ("XL Specialty") seeks a declaration that an excess and umbrella policy issued to Metromont Corporation ("Metromont") imposes no obligation on XL Specialty to defend or indemnify Metromont in an arbitration styled *Tribal Casino Gaming Enterprise v. W.G. Yates & Sons Constr. Co., et al.*, American Arbitration Association Case No. 01-16-0000-4761 (the "Underlying Action"). As explained below, XL Specialty does not have a duty to defend or indemnify Metromont because all claims in the Underlying Action either fall outside the scope of the policy's insuring agreements, or are barred by one or more exclusions within the policies.

## PARTIES

2. Plaintiff XL Specialty is incorporated under the laws of the Delaware and has its principal place of business in Connecticut.

3. Defendant Metromont is incorporated under the laws of the State of South Carolina and has its principal place of business at 2802 White Horse Road, Greenville, SC 29602.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction of this action by virtue of 28 U.S.C. § 1332. Complete diversity exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## THE XL SPECIALTY POLICY

6. XL Specialty issued policy US00074687LI16A to Metromont for the policy period from March 1, 2016 through March 1, 2017. The XL Specialty policy has a limit of $25,000,000 per occurrence, and a general aggregate limit of $25,000,000. A true and accurate copy of the XL Specialty policy is attached hereto as Exhibit A.

7. The XL Specialty policy provides both "follow form" excess liability coverage, as well as "umbrella" coverage. The excess follow form coverage is set forth in Insuring Agreement A (referred to herein as "Coverage A") and the umbrella coverage is set forth in Insuring Agreement B (referred to herein as "Coverage B"). Those agreements provide, in relevant part, as follows:

**I.     INSURING AGREEMENTS**

In consideration of the payment of premium, and subject to the terms, definitions, conditions and limitations of this policy, including any endorsements or amendments thereto, we agree with the **named insured** as follows:

**(A)     Insuring Agreement A – Excess Follow Form Liability**

(1)     We will pay on behalf of the **insured**, subject to Section IV. Limits of Insurance, those amounts the **insured** becomes legally obligated to pay as damages in excess of the **scheduled underlying insurance** as a result of a **claim** covered by the **scheduled underlying insurance**, but only if the **scheduled underlying insurance** has been exhausted by the actual payment of **loss** to which this policy applies.

(2)     Coverage under this Insuring Agreement A shall follow the terms, definitions, conditions and limitations of the **scheduled underlying insurance,** subject to the **policy period**, Limits of Insurance, premium, and any contrary provisions contained in this policy.

\* \* \*

**(B)     Insuring Agreement B - Umbrella Liability Over Self-insured Retention**

(1)     We will pay on behalf of the **insured**, subject to Section IV. Limits of Insurance, those amounts not covered by the **scheduled underlying insurance** that the **insured** becomes legally obligated to pay as damages in excess of the **self-insured retention** because of **bodily injury**, **property damage** (including liability assumed by the **insured** under an **insured contract**) or **personal and advertising injury** taking place anywhere in the world and caused by an **occurrence** during the **policy period**.

(2)     The coverage provided by Insuring Agreement B will not apply to damages that would have been covered by the **scheduled underlying insurance** but for its exhaustion by the payment of **loss.**

(3)     The coverage provided by Insuring Agreement B will not apply to any damages covered by Insuring Agreement A, or arising out of subjects of insurance or exposures to **loss** for which this policy requires the **scheduled underlying insurance** to be maintained.

\* \* \*

*See* XL Specialty Policy § I(A) and (B) (boldface in original, signifying a section heading or a term

3

defined in the policy).

8. With respect to Coverage A, the excess follow form coverage, the XL Specialty policy identifies as "underlying insurance" a commercial general liability policy issued by Zurich American Insurance Company to Metromont (the "underlying Zurich policy"). The underlying Zurich policy bears policy number GLO 9809212-02, and was issued for the same policy period as the XL Specialty policy – March 1, 2016 through March 1, 2017. It has policy limits of $1,000,000 for each occurrence, with a general aggregate limit of $5,000,000. A true and accurate copy of the underlying Zurich policy is attached as Exhibit B.

9. The insuring agreement for Coverage A under the underlying Zurich policy provides in part:

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

* * *

b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory "; [and]

   (2) The "bodily injury" or "property damage" occurs during the policy period;

   * * *

*See* Underlying Zurich policy § I.A.1.

## THE UNDERLYING ACTION AGAINST METROMONT

10. On February 9, 2016, an entity known as the Tribal Casino Gaming Enterprise ("TCGE") filed a lawsuit styled *Tribal Casino Gaming Enterprise v. W.G. Yates & Sons Constr. Co., et al.*, Case No. 1:16-cv-30, against Metromont and others, in the Western District of North Carolina.

11. On May 10, 2016, TCGE filed a second, related lawsuit, also styled *Tribal Casino Gaming Enterprise v. W.G. Yates & Sons Constr. Co., et al.*, Case No. 1:16-cv-132, against Metromont and others, in the Western District of North Carolina.

12. The two TCGE actions have been stayed while they are arbitrated in a combined arbitration proceeding, styled *Tribal Casino Gaming Enterprise v. W.G. Yates & Sons Constr. Co., et al.*, American Arbitration Association Case No. 01-16-0000-4761 (the "Underlying Action").

13. The operative allegations in the Underlying Action are set out in the Second Amended Demand for Arbitration (the "Demand"). A true and accurate copy of the Demand is attached hereto as Exhibit C.

14. TCGE owns and operates Harrah's Cherokee Casino & Hotel in Cherokee, North Carolina.

15. In 2008, TCGE set out to expand the Harrah's Cherokee Casino & Hotel property (the "Project"). The Demand alleges that, as part of the Project, in April 2008 Metromont was hired as a contractor on the Project to construct parking garages for both the Hotel and Casino. The Demand alleges that the contract called for the garages to be constructed using certain pre-cast concrete members that would be reinforced by a grid of carbon fiber material, as opposed to conventional steel reinforcement. Demand at ¶¶ 7-8.

5

16. The Demand alleges that, in 2013, after the construction was completed, some limited cracking and sealant failure was observed at the Hotel garage. The Demand alleges that, on or about December 9, 2013, an on-site meeting took place with Metromont and others to discuss the observed defects. *Id.* at ¶ 11.

17. Subsequent to that meeting, the Demand alleges that Metromont agreed to perform repairs, and that it undertook certain remedial measures in early 2014. *Id.*

18. The Demand alleges, however, that those measures were inadequate. On or about February 19, 2015, one of the exit ramps leading out of the Hotel garage gave way and collapsed underneath a vehicle driving on the ramp. *Id.* at ¶¶ 11, 12.

19. Subsequent to the collapse in February 2015, the Demand alleges that TCGE engaged the services of a consultant to determine the cause of the collapse and to recommend and oversee any remediation. The Demand alleges that the consultant concluded that standard of care for design was not followed for the use of the carbon fiber reinforcing material, which was insufficient for the intended purpose. *Id.* at ¶ 12.

20. In addition, the consultant found that the location and depth of the carbon fiber reinforcement in the pre-cast concrete members was not in accordance with the design and shop drawings. The Demand alleges that this decreased the bearing capacity of those members. *Id.* at ¶ 13.

21. The Demand alleges that, about a year later, on April 15, 2016, there was a second collapse, when the main entrance ramp in the Casino Garage collapsed under a vehicle, resulting in damage to at least one patron's vehicle and, upon information and belief, personal injuries to the patron. *Id.* at ¶ 14.

22. As a result of the collapses, the Demand alleges that TCGE's reputation suffered in the community, and that it had to shut down the garages in whole or in part, causing financial loss to TCGE. *Id.* at ¶¶ 14-17.

23. The Demand alleges that Metromont's calculations for the pre-cast concrete components did not follow the standard of care required by the American Concrete Institute or the industry standard for use of carbon fiber products in pre-cast concrete members. *Id.* at ¶ 18.

24. In addition, the Demand alleges that:

- TCGE "has identified numerous deficiencies in the design and construction of the Garages, including, without limitation, full-depth cracking in the DTs, broken JVI welds between the DT flanges, premature deterioration of the C-GRID in the DTs, detachment of C-GRID carbon fibers, and premature deterioration and failure of the DTs" (*id.* at ¶ 19);

- "improper material was used at the DT to DT connections, all of which caused widespread cracking and failure of the Casino Garage" (*id.* at ¶ 20);

- "Metromont willfully and wantonly ignored publicly published recommendations…on the capacity of C-GRID for precast concrete so as to decrease costs associated with the shipping and manufacture of the DTs" (*id.* at ¶ 21);

- "Metromont knowingly underestimated the concentrated live load in its load calculations used to construct the Garages in violation of accepted industry standards" (*id.* at ¶ 22);

- "Metromont actively concealed these deficient calculations (the likely source of the issues with the DTs) during much of the course of the investigation of the cracking and related issues that had arisen at the Hotel Garage" (*id.* at ¶ 24);

- "Metromont falsely represented to TCGE and Yates-Rentenbach that the DTs were suitable for the Garages based on the specifications provided to Metromont and had actual knowledge that the same was false based on the mechanical and other physical properties of the C-GRID used" (*id.* at ¶ 25); and

- "Metromont did not ensure that the C-GRID was properly located during construction" (*id.* at ¶ 26).

25. The Demand asserts claims against Metromont for negligence, gross negligence,

breach of the implied warranty of fitness for a particular purpose, and unfair and deceptive trade practices.

26. The Demand claims damages against Metromont in excess of $20,000,000.

27. Metromont has submitted a claim to XL Specialty, seeking coverage under the XL Specialty policy for the claims asserted against it by TCGE in the Underlying Action.

28. By letter dated August 29, 2017, XL Specialty declined coverage for those claims. A true and correct copy of XL Specialty's letter to Metromont is attached hereto as Exhibit D.

29. An actual and justiciable controversy presently exists between XL Specialty and Metromont with respect to whether XL Specialty has an obligation under the policy to defend or indemnify Metromont for the claims asserted in the Underlying Action. This substantial controversy, between parties having adverse legal interests, is of sufficient immediacy to warrant the issuance of a declaratory judgment.

## COUNT I

### The XL Specialty Policy Does Not Provide Coverage for the Underlying Action Because the Demand Does Not Allege "Property Damage" Within the Meaning of the Insuring Agreements

30. XL Specialty incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

31. For purposes of Coverage A under the XL Specialty policy, the underlying Zurich policy defines "property damage" as:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

8

*See* Underlying Zurich policy § V.17.

32. For purposes of Coverage B under the XL Specialty policy, "property damage" is defined in substantially similar terms as

> physical injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

*See* XL Specialty Policy § VI(AH).

33. The property damage alleged in the Underlying Action consists of "defective garages" that failed to meet the contractual plans and specifications, industry standards, and good construction practices. The types of faulty workmanship and design alleged against Metromont do not constitute "property damage" as that term is defined in the underlying Zurich policy and the XL Specialty policy.

34. XL Specialty seeks a declaration that there is no coverage under the XL Specialty policy, under either Coverage A or Coverage B, for the Underlying Action because the Demand does not allege "property damage" within the meaning of either the underlying Zurich policy or the XL Specialty policy.

## COUNT II

### The XL Specialty Policy Does Not Provide Coverage for the Underlying Action Because the Demand Does Not Allege an "Occurrence"

35. XL Specialty incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

36. For purposes of both Coverages A and B under the XL Specialty policy, both the underlying Zurich policy and the XL Specialty policy define an "occurrence" as "an accident,

9

including continuous or repeated exposure to substantially the same general harmful conditions." *See* Underlying Zurich policy § V.13; XL Specialty Policy § VI(BB).

37. The types of faulty workmanship and design alleged against Metromont do not constitute an "occurrence" as that term is defined in the underlying Zurich policy and the XL Specialty policy.

38. In addition, the Demand alleges that Metromont engaged in willful and grossly negligent conduct. Such conduct does not constitute an "accident," and does not constitute an "occurrence" within the meaning of the underlying Zurich policy or the XL Specialty policy.

39. XL Specialty seeks a declaration that there is no coverage under the XL Specialty policy, under either Coverage A or Coverage B, for the Underlying Action because the Demand does not allege an "occurrence" within the meaning of either the underlying Zurich policy or the XL Specialty policy.

## COUNT III

### The XL Specialty Policy Does Not Cover the Underlying Action Because, Even if There Was "Property Damage," It Was Known To Metromont Prior to the XL Specialty Policy Period

40. XL Specialty incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

41. With respect to both Coverages A and B, the XL Specialty policy provides that

We will make payment on behalf of the **insured** under Insuring Agreements A and B only if:

(1) Prior to the **policy period**, no **insured** listed under Section II. Who Is An Insured, (B) (1), (6), (7), (8), (9) or (10); no manager in your risk management, insurance or legal department; and no **employee** authorized by you to give or receive notice of an **occurrence**, **claim** or **suit**; knew, prior to the **policy period**, that the **bodily injury** or **property damage** had occurred, in whole or in part, or of the existence of

10

     any **occurrence** that caused **personal and advertising injury**;  or

 (2)  During the **policy period**, no **insured** listed under Section II. Who is An Insured, (B) (1), (6), (7), (8), (9) or (10);  no manager in your risk management, insurance or legal department;  and no **employee** authorized by you to give or receive notice of an **occurrence, claim** or **suit**; knew during the **policy period,** that the **bodily injury** or **property damage** had occurred, in whole or in part , or of the existence of any **occurrence** that caused **personal and advertising injury**, prior to the **policy period**.

For these purposes, **bodily injury**, **property damage**, and **personal and advertising injury**, including the continuation, change or resumption of such **bodily injury**, **property damage**, or **personal and advertising injury**, will be deemed to have been known at the earliest time when any of the above-referenced individuals:

\* \* \*

 (3)  Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to have occurred, or an **occurrence** has been committed that has caused or may cause **personal and advertising injury.**

*See* XL Specialty Policy § I.

  42.  The Demand alleges that TCGE noticed defects in the construction of the Hotel Garage in 2013, and that Metromont had a meeting with TCGE's consultant to discuss these defects on December 9, 2013.

  43.  The Demand alleges that Metromont knew that there were defects with the Garages by December 9, 2013 at the latest, and undertook to repair those defects in early 2014.

  44.  On information and belief, a person in the Metromont risk management, insurance, or legal department learned of the defects in the Project at or shortly after the December 9, 2013 meeting.

  45.  The XL Specialty policy period ran from March 1, 2016 through March 1, 2017.

  46.  The XL Specialty policy does not provide coverage for the Underlying Action because, even if there was damage to the garages that qualified as "property damage" under the

policies (which XL Specialty disputes), relevant employees or officers of Metromont knew that that damage had occurred, or had begun to occur, prior to the XL Specialty policy period.

47. XL Specialty seeks a declaration that it has no duty to defend or indemnify Metromont for the claims asserted in the Underlying Action because the insuring agreements in the XL Specialty Policy do not provide coverage for claims of property damage where the insured had knowledge that the property damage had occurred, or had begun to occur prior to the inception date of the policy.

## COUNT IV

### The Exclusion for "Your Product" Bars Coverage for the Underlying Action

48. XL Specialty incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

49. For purposes of both Coverage A and Coverage B under the XL Specialty policy, the underlying Zurich policy and the XL Specialty policy both exclude coverage for "property damage" to "your product" arising out of it or any part of it. *See* Underlying Zurich policy § I.A.2.k; XL Specialty Policy § V(C)(5).

50. Both policies define "your product" to mean "any goods or products, other than real property, manufactured, sold, distributed or disposed of by" the insured. *See* Underlying Zurich policy § V.21; XL Specialty Policy § VI(SS).

51. The Demand alleges that the Garages were constructed with pre-cast concrete members and a topping slab manufactured by Metromont, all of which qualify as "your product," as defined by the underlying Zurich policy and the XL Specialty policy.

52. XL Specialty seeks a declaration that the exclusion for "your product" bars

12

coverage for the claims asserted in the Underlying Action, under the terms of both the underlying Zurich policy and the XL Specialty policy.

## COUNT V

### The Exclusion for "Your Work" Bars Coverage for the Underlying Action

53. XL Specialty incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

54. For purposes of Coverage A under the XL Specialty policy, the underlying Zurich policy excludes coverage for property damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." The underlying Zurich policy further provides that this exclusion does not apply if the damaged work or out of which the damage arises was performed on behalf of the insured by a subcontractor. *See* Underlying Zurich policy § I.A.2.l.

55. For purposes of Coverage B under the XL Specialty policy, the XL Specialty policy includes an exclusion for property damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." See XL Specialty Policy § V(C)(6).

56. For purposes of both Coverage A and Coverage B, the XL Specialty policy also excludes coverage for property damage to "that particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it." *See* XL Specialty Policy §§ V(B), V(C)(4)(f), and Endorsement 7 § (f).

57. The underlying Zurich policy and the XL Specialty policy define "your work" in substantially similar terms, as work or operations performed by you or on your behalf, and materials, parts, or equipment furnished in connection with such work operations. *See* Underlying Zurich policy § V.22; XL Specialty Policy § VI(TT).

13

58. The carbon-fiber reinforced pre-cast concrete members and the concrete topping slab used in the construction of the garages were designed, manufactured, and/or installed by Metromont. Accordingly, any damage to those materials qualifies as damage to "your work" under both the underlying Zurich and XL Specialty policies, and is excluded from coverage.

59. XL Specialty seeks a declaration that the exclusions for "your work" bar coverage for the claims asserted in the Underlying Action, under the terms of both the underlying Zurich policy and the XL Specialty policy.

## COUNT VI

### The Exclusion for Impaired Property Bars Coverage for the Underlying Action

60. XL Specialty incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

61. For purposes of both Coverage A and Coverage B under the XL Specialty policy, the underlying Zurich policy and the XL Specialty policy both exclude property damage to "impaired property" arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work," or a failure by the insured or anyone acting on its behalf to perform a contract or agreement in accordance with its terms. *See* Underlying Zurich policy § I.A.2.m; XL Specialty policy § V(C)(3).

62. The underlying Zurich policy defines "impaired property" as

> tangible property, other than "your product" or "your work" that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;

14

> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

*See* Underlying Zurich policy § V.8.

63. The XL Specialty policy sets forth a substantially identical definition of "impaired property." *See* XL Specialty policy § VI(P).

64. To the extent that the Underlying Action alleges that the garages include any work or any components that are not "your product" or "your work," then such work or components qualify as "impaired property" under both the underlying Zurich policy and the XL Specialty policy.

65. XL Specialty seeks a declaration that the exclusions for "impaired property" bars coverage for the claims asserted in the Underlying Action, under the terms of both the underlying Zurich policy and the XL Specialty policy.

## COUNT VII

### The Exclusion For Property Damage That is Expected or Intended Bars Coverage for the Underlying Action.

66. XL Specialty incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

67. For purposes of both Coverage A and Coverage B under the XL Specialty policy, the underlying Zurich policy and the XL Specialty policy both exclude property damage that is "expected or intended from the standpoint of the insured." *See* Underlying Zurich policy § I.A.2.a; XL Specialty policy § V(C)(9).

68. The Underlying Action alleges that the damage to the garages was expected or intended by Metromont. Among other allegations, the Demand alleges that Metromont's

15

improper calculations were done knowingly, that Metromont actively concealed its deficient calculations, that Metromont falsely represented that the pre-cast concrete members were appropriate for the garages, and that Metromont had actual knowledge that those representations were false.

69. XL Specialty seeks a declaration that the exclusions for property damage that is expected or intended bars coverage for the claims asserted in the Underlying Action, under the terms of both the underlying Zurich policy and the XL Specialty policy.

## COUNT VIII

### XL Specialty Has No Duty To Defend Metromont In The Underlying Action

70. XL Specialty incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

71. With respect to Coverage A, the XL Specialty policy provides that

[w]e will have the right and duty to defend any **suit** covered by Insuring Agreement A, but only when the **scheduled underlying insurance** or **other insurance** has been exhausted by payment of **loss** to which this policy applies.

*See* XL Specialty policy § III(A).

72. XL Specialty has no duty to defend Metromont in the Underlying Action under Coverage A, because the Underlying Action is not covered by Insuring Agreement A, for the reasons given in Counts I through VII above. In addition, the insurance provided by the underlying Zurich policy has not been exhausted by payment of loss(es).

73. XL Specialty has no duty to defend Metromont in the Underlying Action under Coverage B, because the Underlying Action is not covered by Insuring Agreement B, for the reasons given in Counts I through VII above.

16

74. XL Specialty seeks a declaration that it has no duty to defend Metromont in the Underlying Action, under either Coverage A or Coverage B of the XL Specialty policy.

## PRAYER FOR RELIEF

WHEREFORE, XL respectfully requests that a judgment be entered in its favor as follows:

1. That the Court declare that the XL Specialty policy does not obligate XL to defend or indemnify Metromont in the Underlying Action; and

2. For such other and further relief as this Court deems just and proper.

Respectfully submitted, this the 6th day of October, 2017.

       s/ Thomas M. Contois_____
Thomas M. Contois (N.C. Bar No. 17787)
SMITH MOORE LEATHERWOOD, LLP
434 Fayetteville Street, Suite 2800
Raleigh, North Carolina 27601
Tel.: (919) 755-8827
Fax: (919) 838-3126
tom.contois@smithmoorelaw.com

Timothy Lendino (N.C. Bar No. 43003)
SMITH MOORE LEATHERWOOD, LLP
101 North Tryon Street, Suite 1300
Charlotte, North Carolina 28246
Tel.: (704) 384-2600
Fax: (704) 384-2800
tim.lendino@smithmoorelaw.com

*Attorneys for Plaintiff XL Specialty Insurance Company*